# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG ELECTRONICS, INC.,<br><br>                               Plaintiff,<br>     vs.<br>EASTMAN KODAK COMPANY,<br><br>                               Defendant. | CASE NO. 09-CV-0344 H (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR DISCRETIONARY STAY** |

Before the Court is Defendant's motion for discretionary stay of this action based on the mandatory stay of Case No. 09-CV-0343 H (BLM). (Doc. No. 23.) Defendant filed the motion for stay on April 20, 2009. (Id.) Plaintiff filed an opposition to Defendant's motion on May 4, 2009. (Doc. No. 27.) On May 11, 2009, Defendant filed a reply in support of its motion to stay. (Doc. No. 33.) On May 18, 2009, the Court heard oral argument on Defendant's motion for discretionary stay. Christopher Marchese and Michael Rosen appeared on behalf of the Plaintiff. Mark Selwyn and James Dowd appeared on behalf of the Defendant. For the following reasons, the Court denies Defendant's motion and declines to stay the case at this time.

### Factual & Procedural Background

On February 20, 2009 Plaintiff LG Electronics, Inc. ("LGE") filed three complaints against Defendant Eastman Kodak Company ("Kodak") – two in this district and one with the International Trade Commission ("ITC"). The Complaint commencing this action alleges that

1  several of Kodak's digital camera products infringe LGE patents, namely U.S. Patent Nos.
2  6,885,407 ("the '406 Patent") and 5,077,612 ("the '612 Patent").  (Doc. No. 1.)

3  LGE's complaint commencing Case No. 09-CV-0343 H (BLM) ("the '343 case")
4  alleges that certain Kodak's digital camera products infringe three of its patents: U.S. Patent
5  Nos. 5,995,767 ("the '767 Patent"), 5,774,131 ("the '131 Patent"), and 6,281,895 ("the '895
6  Patent").

7  LGE also filed a complaint with the International Trade Commission ("ITC") on
8  February 20, 2009, requesting that the ITC institute an investigation against Defendant
9  regarding its alleged infringement of these same three patents – '767, '131, and '895. (Walker
10 Decl. ISO Mot. for Stay ["Walker Decl."] Ex. J.)

11 The '343 case is subject to a mandatory stay under 28 U.S.C. § 1659(a) pending
12 resolution of the ITC investigation.  Kodak argues that this action is sufficiently related to the
13 '343 case that the Court should exercise its discretion to stay it as well.  Kodak estimates that
14 such a stay would last for approximately eighteen to twenty months.  (Mot. at 6.)

15 **Discussion**

16 **I.    Motion for Discretionary Stay – Legal Standard**

17 The Supreme Court explains that "the power to stay proceedings is incidental to the
18 power inherent in every court to control the disposition of the causes on its docket with
19 economy of time and effort for itself, for counsel, and for litigants." Landis v. North American
20 Co., 299 U.S. 248, 254 (1936).  In determining whether to stay an action, courts must weigh
21 competing interests that will be affected by the granting or refusal to grant a stay. CMAX, Inc.
22 v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  "Among these competing interests are the possible
23 damage which may result from the granting of a stay, the hardship or inequity which a party
24 may suffer in being required to go forward, and the orderly course of justice measured in terms
25 of the simplifying or complicating of issues, proof, and questions of law which could be
26 expected to result from a stay."  Id. (citing Landis, 299 U.S. at 254-55).

27 "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones,
28 520 U.S. 681, 708 (1997) (citing Landis, 299 U.S. at 255).  "If there is even a fair possibility

that the stay for which [the movant] prays for will work damage to someone else," the movant "must make out a clear case of hardship or inequity in being required to go forward." CMAX, 300 F.2d at 268 (quoting Landis, 299 U.S. at 255).

Subject to these standards, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Levya v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." Id. at 863-64. However, the Federal Circuit recognizes the existence of a "strong public policy favoring expeditious resolution of litigation." Kahn v. General Motors Corp., 889 F.2d 1078, 1080 (Fed. Cir. 1989). With these principles in mind, the Court considers the relevant Landis factors as they relate to this case.

## II.     Possible Damage Resulting from a Stay

In opposing Defendant's motion for discretionary stay, Plaintiff LGE argues that a stay would cause it severe prejudice for several reasons. (Opp. at 7.) The ITC has set a target date of July 30, 2010 for completion of its investigation regarding Kodak's alleged infringement of the '767, '131, and '895 Patents. (Rosen Decl. in Opp. to Mot. for Stay ["Rosen Decl."] Ex. J.) Even if the parties decline to appeal the ITC's decision to the Federal Circuit, a stay until that date will delay trial in this matter by more than a year. Plaintiff argues that such a delay could aggravate harm caused by Defendant's alleged infringement of the '407 Patent, as a stay would postpone Plaintiff's ability to obtain injunctive relief against Defendant. (Opp. at 8.)[1] Defendant points out that Plaintiff is currently seeking equitable relief from the ITC; Plaintiff's ITC complaint requests an exclusion order barring the importation of the accused products and a cease-and-desist order barring post-importation sales. (Walker Decl. Ex. J at 14.) However, the mere fact that Plaintiff seeks such relief elsewhere does not foreclose its prejudice

---

[1] The '407 Patent will not expire until October 2020. (Compl. Ex. 1.); 35 U.S.C. § 154. The other patent in this action, the '612 Patent, is set to expire on December 20, 2009. (Compl. Ex. 2.)

argument. "It is the duty of courts to avoid unnecessary delay in resolving the rights of litigants." Kahn, 889 F.2d at 1080.

Plaintiff further argues that a stay would harm its interests because such a delay could result in the loss of testimonial and documentary evidence. (Opp. at 8-9.) The Supreme Court has reversed stays to avoid such harm, recognizing that delaying a trial increases "the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts." Clinton, 520 U.S. at 708. This danger is inherent in any stay and is a factor that the Court must consider. Testimonial evidence is more reliable when obtained soon after the relevant events. Moreover, as the parties' naturally experience turnover in workforces during a stay, they may lose their ability to compel deposition and trial testimony from employees who leave the companies. See STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (a party may compel the testimony of its employees at trial). There is also the unavoidable risk that important documents might be lost during the delay caused by a stay in this case. This risk is greater when important documents are under the control of third parties, as these entities might not be obligated to preserve that evidence. Here, Defendant contracts with several non-party entities who supply it with hardware for its allegedly infringing products. (Marchese Decl. in Opp. to Mot. to Transfer Ex. A.) Proceeding to discovery and trial increases the likelihood of obtaining reliable information from these companies.

The Court concludes that Plaintiff has shown a "fair possibility" that the requested stay would harm its interests in this litigation. CMAX, 300 F.2d at 268 (quoting Landis, 299 U.S. at 255).

**III.   Possible Hardship to Defendant Resulting from Going Forward**

Because Plaintiff has shown a fair possibility that it would be harmed by a stay of this action, Defendant "must make out a clear case of hardship or inequity in being required to go forward" in order to justify a stay. CMAX, 300 F.2d at 268 (quoting Landis, 299 U.S. at 255). For the following reasons, the Court concludes that Defendant has not made such a showing.

/ / /

1  Defendant's arguments for a stay focus on the relation between this action and the '343
2  case. Defendant Kodak asserts that, without a stay of this action, the parties will engage in two
3  rounds of duplicative discovery. Kodak points out that, while this action and the '343 action
4  involve different patents owned by LGE, the three Kodak products accused of infringing
5  LGE's patents in this case are also accused of infringing LGE's patents in the '343 action.
6  (Compl.; Case No. 08-CV-0343 H (BLM) Compl.)

7  Defendant further argues that the patents in suit here claim technology similar to those
8  in suit in the '343 case. First, Defendant compares the '895 Patent from the '343 case to the
9  '407 Patent in this case. The '895 Patent is entitled "Level Adjust Display Apparatus And
10 Method For On-Screen Display Menu In Image Display Device." ('343 Compl. Ex. 3.) The
11 invention involves the use of an on-screen display to aid the user in adjusting various
12 parameters of the image display device. (Id.) Specifically, the invention of the '895 Patent
13 seeks to "provide a level adjust display apparatus and method for an [on-screen display] menu
14 in an image display device which overcomes the conventional disagreement between the
15 adjusting direction by a level adjust button and the moving direction of a level meter being
16 displayed on an [on-screen display] screen." (Id. 2:55.) In other words, as a user adjusts a
17 display on a device with this technology, the invention displays a level meter corresponding
18 to the property being adjusted. If the adjustment control is vertical, the displayed level meter
19 is vertical. If the adjustment control is horizontal, the displayed level meter is horizontal.

20 The '407 Patent at issue in this case is entitled "Apparatus For Displaying Guide Line
21 For Picture Adjustment In Monitor" and is also for use in devices incorporating an image
22 display. (Compl. Ex. 1.) The invention itself "displays a guideline around the periphery of the
23 screen when adjusting the picture, thereby enabling a user to confirm the adjusted results." (Id.
24 1:11.) This technology is related to the '895 Patent in that both inventions help the user to
25 adjust the display properties of an image display device. However, while these inventions may
26 be used in the same devices, they do not perform the same function.

27 Similarly, Defendant compares the '131 Patent from the '343 case to the '612 Patent
28 in this case. The '131 Patent is entitled "Sound Generation And Display Control Apparatus

1  For Personal Digital Assistant." ('343 Compl. Ex. 2.)  The invention seeks to "provide an
2  improved sound generation and display control apparatus for a personal digital assistant
3  capable of improving system and transmission performances for various kinds of display
4  apparatuses and of editing an externally supplied video source." (Id. 2:24.)

5  The '612 Patent is entitled "Portable Electronic Picture Recording Device With
6  Nonvolatile Electronic Memory."  (Compl. Ex. 2.)  This invention has the objective of
7  providing a "portable electronic picture recording device which requires no moving parts to
8  store pictures and whose energy consumption is reduced to a minimum." (Id. 2:14.) While
9  this technology may be found in the same products as the '131 Patent technology, the
10 inventions explicitly have different goals.

11 Moreover, in comparing the patents at issue in this case to the patents at issue in the
12 '343 case, the Court notes that they do not have overlapping inventors, they do not have
13 common prosecuting attorneys of firms, they do not have any common cited references, they
14 do not cite to one another in their disclosure or in their respective specifications, and no patent
15 at issue in this case is in the same patent family as a patent from the '343 case.

16 Accordingly, the Court concludes that the patents at issue in this suit and the '343 case
17 are not so related as to result in excessive hardship to the Defendant if this case is not stayed.
18 Because the two cases involve some of the same allegedly infringing products, discovery will
19 overlap.  However, duplicative effort may be reduced if the parties enter into an agreement
20 allowing cross-use of discovery for the two cases.  Accordingly, the Court concludes that
21 Defendant has not made out a clear case of hardship supporting a stay. CMAX, 300 F.2d at
22 268 (quoting Landis, 299 U.S. at 255).

23 **IV.    The "Orderly Course of Justice"**

24 Finally, the Court considers "the orderly course of justice measured in terms of the
25 simplifying or complicating of issues, proof, and questions of law which could be expected to
26 result from a stay." Id.  Defendant Kodak argues that this factor supports a stay because the
27 ITC's investigation of Kodak's alleged infringement will simplify the issues to be decided by
28 the Court in this litigation.  However, neither of the patents in this suit is the subject of the ITC

1  investigation. To the extent the ITC's findings might bear on issues relevant to this litigation,
2  the Court notes that the ITC's decisions are not binding on the Court. Texas Instruments Inc.
3  v. Cypress Semiconductor Corp., 90 F.3d 1558, 1569 (Fed. Cir. 1996). Instead, the Court "can
4  attribute whatever persuasive value to the prior ITC decision that it considers justified." Id.
5  The Court concludes that this factor does not sufficiently warrant a stay of this case.

### Conclusion

Accordingly, the Court denies Defendant's motion for discretionary stay.

IT IS SO ORDERED.

DATED: May 22, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT