# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG ELECTRONICS, INC.,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br><br>EASTMAN KODAK COMPANY,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 09-CV-0344-H (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF PLAINTIFF'S U.S. PATENT NO. 5,077,612** |

On February 20, 2009, Plaintiff LG Electronics, Inc. ("LGE") filed a complaint alleging that Defendant Eastman Kodak Company ("Kodak") infringed one or more claims of U.S. Patent Nos. 6,885,407 and 5,077,612 under 35 U.S.C. § 271. (Doc. No. 1.) On September 1, 2009, Kodak filed a motion for summary judgment of invalidity of LGE's U.S. Patent No. 5,077,612 ("'612 patent"). (Doc. No. 52.) On September 10, 2009, LGE filed an *ex parte* application to strike or continue Kodak's motion for summary judgment. (Doc. No. 53.) On September 18, 2009, Kodak filed a response in opposition to LGE's application. (Doc. No. 55.) On September 22, 2009, the Court denied LGE's *ex parte* application. (Doc. No. 56.) On September 29, 2009, LGE filed a response in opposition to Kodak's motion for summary judgment. (Doc. No. 57.) On October 6, 2009, Kodak filed a reply in support of its motion for summary judgment. (Doc. No. 58.) The Court held a hearing on the matter on October 13, 2009. Mark Selwyn and Arthur Coviello of Wilmer Cutler Pickering Hale and Dorr LLP appeared on behalf of Kodak, and Christopher Marchese and Michael Rosen of Fish &

Richardson P.C. appeared on behalf of LGE. For the reasons set forth below, the Court denies Kodak's motion for summary judgment of invalidity of the '612 patent.

## Background

On February 20, 2009, LGE filed a complaint alleging that Kodak infringed one or more claims of U.S. Patent Nos. 6,885,407 and 5,077,612 under 35 U.S.C. § 271. (Doc. No. 1 at 3-4.) On September 1, 2009, Kodak filed a motion for summary judgment of invalidity of LGE's '612 patent. (Doc. No. 52.) In particular, Kodak contends that the '612 patent is invalid for failure to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2. (Id. at 1.)

The '612 patent is entitled "Portable Electronic Picture Recording Device With Nonvolatile Electronic Memory." (Doc. No. 1, ¶ 13.) The patent issued on December 31, 1991, and is directed to a portable electronic picture recording device that, among other things, is capable of "reproducing a scene in a moving sequence as in camcorders, as well as single pictures as in still video cameras." ('612 patent, Doc. No. 1, Ex. 2 at col. 2 l.19-21.) Claim 1 provides:

> 1. A portable electronic picture recording device comprising:
>
> a camera which generates an analog picture signal for at least one frame of images;
>
> an analog-to-digital (A/D) converter for converting the analog picture signal too digital picture data;
>
> a signal processing and control circuit having means for compressing the digital picture data for storage in an electronic memory and for retrieving and expanding the digital picture data into television signals for display on a television receiver, respectively, wherein said signal processing and control circuit further includes **means for processing data for picture signal frames in a plurality of modes, including single-picture, and scene shooting (sequence) modes** and wherein said signal processing and control circuit further includes a first filter for reducing said digital picture data for storage and a second filter for data expansion upon playback;

said electronic memory having a very large plurality of erasable, programmable, nonvolatile memory cells for storing digital picture data for a plurality of picture signal frames without the need for constant power supply;

a digital-to-analog (D/aA) converter for converting restored digital picture data into analog output signals; and

a power supply for supplying power to said signal processing and control circuit without the need for constantly supplying power to said electronic memory to maintain the data stored therein.

*(*Id. at col. 6 l.11-42 (emphasis added)). Claim 1 is the sole independent claim, and all remaining claims depend on claim 1. (Id. at col. 6 l.43-64.) Kodak's motion for summary judgment of invalidity of the '612 patent focuses on the highlighted means-plus-function limitation of claim 1. (Doc. No. 52 at 3.)

**Discussion**

**I.  Summary Judgment - Legal Standard**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Amtel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 56(c)). In determining whether to grant a motion for summary judgment, "all factual inferences are to be drawn in favor of the nonmoving party." Med. Instrumentation and Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1220 (Fed. Cir. 2003).

**II.  Patent Invalidity - Legal Standard**

To prevail on its motion for summary judgment, Kodak must prove, by clear and convincing evidence, that the specification in the '612 patent lacks adequate disclosure of a structure to be understood by one skilled in the art as able to perform the recited functions. Issued patents are presumed valid, and "therefore the evidence to show invalidity must be clear and convincing." Med. Instrumentation, 344 F.3d at 1220. Under 35 U.S.C. § 112, ¶ 2, a patent "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." A claim expressed

in means-plus-function language "shall be construed to cover the corresponding structure. . . described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. A means-plus-function claim is invalid under 35 U.S.C. § 112, ¶ 2 if the patent specification does not adequately disclose structure to perform the claimed function. In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc). Whether a means-plus-function limitation is adequately supported by the specification is determined by from the vantage point of one skilled in the art. Amtel, 198 F.3d at 1379. "[A] challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding, by clear and convincing evidence, that the specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the recited function." Budde v. Harley-Davidson, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 2001); see also Med.Instrumentation, 344 F.3d at 1220 (patents are presumed valid, "therefore the evidence to show invalidity must be clear and convincing").

**III. '612 Patent**

Kodak alleges that the '612 patent is invalid as indefinite, because it provides no structure for a means-plus-function limitation included in each of its claims. (Doc. No. 52, Attach. 1 at 1.) In its opposition, LGE identifies two specific portions of the specification which ultimately may provide structural support for the means-plus-function limitation at issue. (Doc. No. 57 at 4.) Specifically, LGE points to the following potentially supporting passages to assert that Claim 1 is definite within the meaning of § 112, ¶ 2: (1) column 4, line 63 through column 5, line 6 and including Figures 1 and 2; and (2) column 5, lines 19-36.[1] (Id.)         LGE alleges that the first of the two alternative structures describes how the signal processing and control circuit processes data for picture signals in a plurality of modes:

> The signal-processing and control circuit c is fed with fifth control signals s5 from the control unit t, which has buttons for operator selection of single-picture,

---

[1] LGE's expert, Dr. Edward J. Delp, opines that a person of ordinary skill in the art would understand the meaning of the means-plus-function limitation based on the above-identified portions of the specification. (Doc. No. 57 at 12-19, and Decl. of Edward J. Delp.)

multipicture or scene shooting (picture sequence), playback and other modes. These fifth control signals s5 initiate the corresponding functions which are coordinated together in the picture recording device. Thus, the advantages of camcorderlike functions can be obtained in a more portable and handy apparatus which has an electronic memory that obviates the need for moving storage medium mechanisms and has very low power requirements.

('612 patent, Doc. No. 1, Ex. 2 at col.4:63-5:6.) The patent contains two figures that illustrate how the invention works. (Id. Fig. 1 & 2.) Figure 1 is a schematic diagram of the claimed portable electronic picture recording device:



The control unit t communicates with the control circuit c via the "fifth control signals s5." (Id. at col. 4:63-65.) The control unit t includes buttons for selecting various modes, including "single-picture, multipicture, or scene shooting (picture sequence), playback, and other modes." (Id. at col. 4:64-67.) This selection is implemented through the "fifth control signals s5," which "initiate the corresponding functions which are coordinated together in the picture recording device." (Id. at col. 4:67–5:1.)

The second illustration of the structure supporting the invention is provided in Figure 2. Figure 2 is a patent block diagram of the signal processing and control circuit:



This figure shows control circuit c, which includes the clock generator, the video signal processing block, memory control s3, data line d2, and control signals s1 and s2. Control signals s1 and s2 "are generated to control, for example, the camera k and the digitization process in the A/D converter wl, respectively." (Id. at col. 3:24-27.) LGE argues that these structures in Figure 2, together with control unit t, the buttons on control unit t, and fifth control signals s5, make up the structure that performs the claimed function in the '612 patent, and that the structure and the function are clearly linked. (Doc. No. 57 at 11.) In addition, LGE points to a second alternative structure to support its claim:

> One implementation of a signal processing circuit similar to the signal-processing and control circuit c is described, as an example, in the data sheet of ITT Semiconductors entitled "VMC 2260 Video Memory Controller", Edition 1988/8, order No. 6251-248-7E. Shown therein is a, monolithic integrated circuit signal processor for storing one complete television picture in associated dynamic random access memories to implement a flicker free TV display. It includes signal processing circuits which serve, inter alia, to reduce the data of the digitized picture signals in order to minimize the memory capacity required for storage and playback. Other types of integrated filter circuits can also be used to serve the data reduction and complementary expansion functions. The

1
2
3

> necessary control signals are governed by means of an externally applied clock signal. It is also possible to record individual "snapshots" of up to nine different television-signal sources.

4
5
6
7

('612 patent, Doc. No. 1, Ex. 2 at col. 5:19-36.) LGE alleges that this description provides an adequate corresponding structure in the form of a signal processing circuit, control signals, and a clock signal that records and processes both television and still pictures. (Doc. No. 57 at 6-7.)

8
9
10
11
12
13

LGE also argues that it may be able to provide further evidence of corresponding structure in the specification after obtaining the testimony of the inventor and the prosecuting attorneys of the '612 patent. (Id. at 23.) The Court notes Kodak moved for summary judgment of invalidity of the '612 patent before the claim construction process has been completed in this case.[2]

14
15
16
17
18
19

The Court concludes that at this time, Kodak has not made a clear and convincing showing that LGE's proposed structures cannot perform the claimed function, or that the proposed structures are not clearly linked to the function of the means for processing. Specifically, Kodak has not shown that the specification lacks adequate disclosure of structure to be understood by one skilled in the art as able to perform the recited functions. See Intel Corporation v. Via Technologies, 319 F.3d 1357 (Fed. Cir. 2003).

20
21
22
23
24
25
26
27

To the extent Kodak argues that LGE cannot rely on the ITT data sheet to provide the structure for the means-plus-function limitation, the Court notes that while patent applicants cannot incorporate material by reference to provide the structure for a means-plus-function limitation, LGE's patent contains more than a mere reference the ITT data sheet. ('612 patent, Doc. No. 1, Ex. 2 at col. 5:19-36.) Specifically, after referencing the ITT data sheet, LGE's second proposed structure describes a "monolithic integrated circuit signal processor for storing one complete television picture in associated dynamic random access memories to implement a flicker free TV display," which includes "signal processing circuits" that reduce

28

---

[2] The claim construction process was set to begin on October 9, 2009.

the data of the digitized picture signals.  The proposed structure also includes "control signals ... governed by means of an externally applied clock signal."  Furthermore, the Court notes that even if LGE could not rely on its second proposed structure because of the reference to ITT data sheet, it could still rely on the first proposed structure, described in column 4, line 63 through column 5, line 6 and including Figures 1 and 2.

Viewing all factual inferences in a manner most favorable to the nonmoving party, the Court construes the means-plus-function language to be covered by the corresponding structure provided by the specification at column 4, line 63 through column 5, line 6.  Therefore, for the purposes of ruling on Kodak's motion for summary judgment, the Court concludes that Kodak has not met the burden of showing invalidity of the '612 patent under 35 U.S.C. § 112, ¶ 2 by clear and convincing evidence.

Accordingly, the Court **DENIES** Defendant Kodak's motion for summary judgment of invalidity of LGE's U.S. Patent No. 5,077,612 at this time.  Following the Court's claim construction, Defendant may bring a new motion for summary judgment, if appropriate.

**IT IS SO ORDERED.**

DATED: October 14, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT